UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WASHOE-MILL APARTMENTS,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION,<br><br>Defendant. | Case No. 3:12-cv-00418-MMD-WGC<br><br>ORDER<br><br>(Counter-Defendant's Motion for<br>Summary Judgment – dkt. no. 21) |
| U.S. BANK NATIONAL ASSOCIATION,<br><br>Counterclaimant,<br><br>v.<br><br>WASHOE-MILL APARTMENTS;<br>SECRETARY SHAUN DONOVAN,<br><br>Counter-defendants. | |

## I.    SUMMARY

Before the Court is Counter-defendant Secretary of the Department of Housing and Urban Development Shaun Donovan's ("HUD") Motion for Summary Judgment. (Dkt. no. 21.) For the reasons set forth below, the Motion is granted.

## II.    BACKGROUND

The parties agree on the majority of the facts in this case. Plaintiff/Counter-defendant Washoe-Mill Apartments ("WMA") is a Nevada General Partnership comprised of eight partners. WMA entered into a partnership agreement in order to construct and operate a HUD subsidized facility for seniors and disabled citizens, the Washoe-Mill Apartments. (Dkt. no. 1 ¶ 4.) In 1993, Bank of America Nevada ("BOAN")

1    and the Washoe Housing Finance Corporation ("WHFC") entered into a Trust Indenture

2    Agreement ("Agreement") regarding bonds used to refinance WMA's mortgage loans for

3    the WMA facility. (Dkt. no. 21 at 3.) The Agreement was executed pursuant to HUD's

4    tax-exempt bond financing program regulations. (*Id.*) Under the Agreement, BOAN was

5    the trustee of the bond proceeds and was charged with making payment to bondholders.

6    (*Id.* at 4.) U.S. Bank is BOAN's successor in interest under the Agreement. (*Id.* at 4; dkt.

7    no. 1 ¶ 5.) HUD states that these bonds were tax-exempt, the mortgage was insured by

8    HUD, and WMA received rental subsidies from HUD. (*See* dkt. no. 21 at 3.)

9          The WMA facility was sold on January 21, 2011, and the payoff amount for the

10   mortgage loan was remitted as full settlement of the mortgage. (*See id.* at 3–4; dkt. no. 1

11   ¶ 6.)  A year later, in January 2012, a trust officer for U.S. Bank informed WMA that it

12   had conducted an audit that revealed the existence of $229,160.81 remaining in the trust

13   account. (*See* dkt. no. 21 at 4.) U.S. Bank conducted an investigation to determine who

14   the funds belonged to but was unable to reach a conclusion. (*See* dkt. nos. 21 at 4; 1 ¶

15   8.) U.S. Bank declares that it has no beneficial interest in the remaining balance. (*See*

16   dkt. no. 6 ¶ 20.)

17         WMA asserts a single claim for conversion. WMA asks that this Court grant it

18   damages for the full amount remaining in the trust, as well as prejudgment and

19   postjudgment interest and the cost of the suit.

20         On October 9, 2012, U.S. Bank answered the Complaint and brought

21   counterclaims against WMA and HUD. (Dkt. no. 6.) On December 18, 2012, Counter-

22   defendant HUD answered and set forth a prayer for relief asking for the full amount

23   remaining in the trust and the cost of the suit. (Dkt. no. 15.) HUD moved for summary

24   judgment on February 14, 2013. (Dkt. no. 21.) WMA filed its response on March 10,

25   2013 (dkt. no. 28), and HUD replied on March 20, 2013 (dkt. no. 29). HUD filed an

26   additional declaration in support of its motion for summary judgment on April 19, 2013.

27   (Dkt. no. 33.)

28   ///

U.S. Bank's response was limited to a request for attorney fees and costs. (Dkt. no. 27.) U.S. Bank has subsequently filed a motion to be relieved as stakeholder (dkt. no. 37) and a motion for attorney fees and costs (dkt. no. 38). These motions are not addressed in this order.

During the pendency of the case, U.S. Bank has deposited $229,160.81 in interpleaded funds into the registry of the Court. (Dkt. no. 26.)

## III.   LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v.  Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence

negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

HUD moves for summary judgment on the grounds that the contractual language of the Agreement is clear that the interpleaded funds belong to HUD.

The Agreement was entered into pursuant to Section 11(b) of the United States Housing Act of 1937. (*See* dkt no. 21 at 5–6.) HUD explains that Section 11(b) was originally designed to finance the acquisition, construction, or rehabilitation of low income housing. (*Id.* at 5.) After interest rates dropped in the late 1980s, however, Section 11(b) was used exclusively to pay off existing bonds by issuing new bonds at a lower interest rate. (*Id.*) In addition to insuring the mortgage through these tax-exempt bonds, HUD also provides rent subsidies. (*Id.* at 3, 5.) In exchange for these benefits, "[u]pon full payment of the principle and interest on the obligations (including that portion of the obligations attributable to the funding of the debt service reserve), any funds remaining in the debt service reserve shall be remitted to HUD." 24 C.F.R. § 811.108(a)(3).

///

HUD asserts that Section 413 of the Agreement incorporates this statutory requirement.  Section 413 states that, "[u]pon final payment of all principal of, premium, if any, and interest on the Bonds, and upon satisfaction of all claims against the Issuer and the Trustee hereunder . . . any moneys remaining in all Funds shall be paid at the written direction of the Issuer to HUD." (Dkt. no. 21 at 10 (citing dkt. no. 21-1 at 34).)

The parties agree that all bonds have been redeemed, that the mortgages have been satisfied, and that the trustee has been compensated. (*See* dkt. nos. 21 at 10; 1 ¶ 6; 27 at 2–3). Additionally, U.S. Bank acknowledges in its response to HUD's Interrogatory Number 2, that "the funds interpled represent 'moneys remaining in all Funds' as described in section 413 of the Trust Indenture Agreement." (Dkt. no. 33-1 at 3.) Plaintiff has, therefore, demonstrated that the interpleaded funds fall within the control of Section 413 of the Agreement, which designates, as required by statute, that the funds belong to HUD.

WMA makes two arguments in opposition to HUD's motion. First, while WMA admits that in the absence of clear evidence of a differing intent, contracts should be read for their plain meaning, it argues that a contract provision should not be read to create an absurd result. (Dkt. no. 28 at 3.) The alleged absurd result here is that according to HUD's interpretation of the statute, any surplus in the fund belongs to HUD, even if the surplus is the result of a mistake. WMA has not demonstrated, however, that there is any risk of an absurd result in this case. U.S. Bank has stated that it has no interest in the funds and has raised no indication that an error was possible. (Dkt. no. 27 at 2–3.) Indeed, U.S. Bank has admitted that the interpleaded funds are governed by Section 413 of the Agreement.

Second, WMA argues that U.S. Bank and WHFC's inability to decide who the money belongs to is evidence that there is a genuine issue of material fact concerning the owner of the interpleaded funds. (Dkt. no. 28 at 4.) WMA further states that in 2012 the Vice President of U.S. Bank's global trust services indicated that the funds might belong to WMA, suggesting that WMA is the rightful owner. (*Id.*)

1       This argument fails for a number of reasons. First, U.S. Bank has stated explicitly

2   that it takes no position regarding the dispute. (Dkt. no. 27 at 2.) The evidence that WMA

3   cites to does not suggest U.S. Bank has, in fact, taken a position. Indeed, in the 2012

4   conversation referenced by WMA, the U.S. Bank trust officer stated that he was not

5   authorized to determine the owner of the funds and that he wanted to get counsel

6   involved. (Dkt. no. 28, Ex. 4.) Second, the mere fact that there is a dispute regarding

7   funds does not mean that there cannot be a resolution as a matter of law. Finally, WMA

8   provides no facts, or legal theory, that supports the conclusion that they, or any other

9   party, are the rightful owner of the funds. WMA has not met its burden in opposing

10  summary judgment by failing to offer admissible evidence to show that a genuine issue

11  of material fact exists to preclude summary judgment. *See Reese v. Jefferson School*

12  *Dist. No. 14L*, 208 F.3d 736, 738 (9th Cir. 2000) (the non-moving party carries the

13  burden of identifying why summary judgment should not be granted).

14  **V.    CONCLUSION**

15      The Court notes that the parties made several arguments and cited to several

16  cases not discussed above. The Court has reviewed these arguments and cases and

17  determines that they do not warrant discussion as they do not affect the outcome of the

18  Motion.

19      It is therefore ordered that Counter-Defendant's Motion for Summary Judgment

20  (dkt. no. 21) is granted. The Court will order disbursement of the funds once U.S. Bank's

21  Motion for Attorney Fees and Costs (dkt. no. 38) has been adjudicated.

22      DATED THIS 27th day of September 2013.

23

24

25  MIRANDA M. DU
    UNITED STATES DISTRICT JUDGE

26

27

28